(No. 26761.—

E. FRANK JONES *et al.*, Appellees, *vs.* JOS. GREENSPON'S SON PIPE CORPORATION, Appellant.

*Opinion filed January 21, 1943.*

POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND, (ABRAHAM GREENSPAHN, CARL SCHULZ, and RALPH A. MAYER, of counsel,) for appellant.

ANDREW O. NIEHOFF, and HARRY C. MOORE, for appellees.

Mr. JUSTICE FULTON delivered the opinion of the court:

This was an action at law brought in the circuit court of Clinton county by the appellees, as owners and assignees of a certain oil and gas leasehold, against the appellant corporation, claiming damages to an oil well situated on said leasehold caused by trespass on the part of appellant. The case was tried before the court without a jury and judgment awarded the appellees in the sum of $2500. The cause was appealed to the Appellate Court where the judgment was affirmed and an appeal was allowed by this court.

The complaint was filed July 27, 1940, and alleged that the appellees were engaged in a joint undertaking of drilling and operating an oil well on real estate owned by one Ed Bozett, and that they were the owners of a certain lease covering seven eighths of all the oil and gas on said premises. The complaint further alleged that the appellees were also the owners of pipe, casing, tubing and rods, all a part of the lease, and other fixtures used by them in the operation of said oil well. The complaint further asserts that the oil well on the premises was capable of producing ap-

proximately 2500 barrels of oil per day, and was of the value of $10,000, and that the appellant, on or about March 15, 1939, unlawfully and wrongfully entered the leasehold premises and removed the tubing, rods and equipment in the well and shot the casing in said well and removed same, although the casing had been cemented therein, thereby causing the complete destruction of the well.

The answer of the appellant denies that the appellees, or any of them, were the owners of the oil casing mentioned in the complaint, and denies that the same was a part of the lease. The answer denies the unlawful trespass and injury and alleges that said casing was sold by appellant to appellee Jones, under a conditional-sales contract, and that by virtue of the conditions of said conditional-sales contract the appellees never had any right, title or interest in or to the said oil casing. The appellant also filed a counterclaim, seeking judgment against appellee Jones, for the balance due on the purchase price of said casing. The court found against the appellant on its counterclaim and no appeal was taken from that ruling. In the answer of appellee Jones, to the counterclaim, it was stated that appellant knew that the casing would be cemented in the hole and that the same would become real estate and a part of the leasehold.

The evidence shows that this oil well was situated in proven territory in Centralia, Illinois. It further shows that at about the time of the completion of the well and on September 12, 1938, appellee Jones purchased 1388 feet of well casing and executed with appellant a conditional-sales contract. The purchase price for said well casing was $814.89. In that agreement the casing was described fully. The contract provided that the payment of said purchase price should be made as follows: $121.02 upon delivery of the pipe; $346.94 on October 12, 1938; $346.93 on November 12, 1938, as evidenced by two promissory notes bearing interest at the rate of six per cent per annum.

Some of the pertinent portions of the conditional-sales contract were as follows: "Upon failure of vendee to pay the aforementioned notes, when due, or upon breach or failure of vendee to perform any of the within terms, conditions or agreements, it is agreed that the vendor or its agent, may, at vendor's option, and either with or without legal process, have the right to enter the premises upon which said property shall be installed, and take possession of and remove said casing," and "It is the intention of the parties hereto, that the title to said goods herein designated shall not pass until the full purchase price or any judgment therefor is paid, but said title shall remain in vendor until that time." Also, "The vendee agrees not to remove or suffer to be removed the said property from the premises occupied by vendee and used as an oil well, * * * said casing herein described to be used inside of a well as casing, until said casing is paid for in full, save with the written consent of the vendor." A further provision says, "The vendee agrees that said property shall be used as personalty and shall not be attached to the realty nor become a part of the realty occupied by vendee as aforesaid."

Default was made in the payment due on October 12, 1938, and on November 12, 1938, default was made in the other payment provided by the contract. Certain notices and demands were made upon the appellee Jones, for the return of the casing. The testimony showed that the casing had been imbedded and cemented in the hole for the oil well with 100 sacks of cement. When the oil well was first drilled it produced on the first day 80 barrels and on the second day 25 barrels. In completing the drilling, the men dropped the bailer in the hole, and after this only a few barrels of oil were produced each day. About this time the appellee Jones ceased work on the well and went away temporarily to work on some other well. Thereafter, on or about April 17, 1939, the appellant entered upon the

leasehold premises and repossessed the casing. In doing so it was shown that the appellant used a pulling machine with hydraulic jacks, and when the casing could not be readily pulled out, had a bomb exploded in the well and shot the pipe loose at about a depth of 800 feet. The evidence further showed that in this process the appellant had taken possession of 1380 feet of rods having a value of about $175 and 1380 feet of tubing of a value of about $390.98, and three tanks, one of which it admitted selling for $100, in addition to the well casing in controversy.

It is insisted by the appellant that both the trial and Appellate courts erred in finding that the casing, which was the subject matter of the written contract, became so affixed to the real estate that it lost its character as personal property, and thereby the act of appellant in removing the same was a trespass upon the leasehold interests of the appellees. The appellees contend that the gist of the action was the wrongful manner in which appellant tried to take the casing, but there is no charge in the complaint that the appellant used any greater force than was necessary to remove the casing from the premises, in accordance with its rights under the terms of the contract.

The Appellate Court clearly erred in holding that the appellant had no right to enter upon the leasehold premises and repossess the casing because the same had become imbedded and cemented in the oil well. To so hold was, in effect, to transfer the title to the casing from the vendor to the vendee, through the act of the latter, in plain violation of the terms of the contract. The conditional-sales contract is plain and specific in its terms as above set forth. It provided that the title should remain in the seller until the purchase price was fully paid; that the vendor had the right to retake the property upon breach in performance by the buyer; that the seller had the right to enter the premises upon which the property was installed and repossess the same; and that the property should at all times

remain personalty and not become part of the realty occupied by the vendee. As between the parties, these clauses constitute a binding agreement and evidence the intention of the parties, which agreed intention must control. In *Green* v. *Ashland State Bank,* 346 Ill. 174, it was held that the words in the contract control, as between the original parties, since it must be presumed that every word in an agreement is to be given effect and the parties are presumed to know and intend the full meaning of the provisions in the contract. The assignee-appellees are bound by the terms of the agreement, because in the complaint they describe themselves as engaged in a joint undertaking along with Jones in drilling and operating an oil and gas well.

The sale of a chattel under a conditional-sales agreement, which incorporates therein a title-retention provision that the property remains the property of the vendor until the full purchase price has been paid, has long been recognized as valid in this State. (*Sherer-Gillett Co.* v. *Long,* 318 Ill. 432.) In this case the buyer failed to perform and the seller exercised its right to take back the property. Its continuing title to the property sold and its right to possession on breach, where no rights of third parties are involved, is upheld by the decisions of this court. (*Baker* v. *McClurg,* 198 Ill. 28.) The case of *White Way Electric Sign Co.* v. *Chicago Title and Trust Co.* 368 Ill. 482, relied upon by appellees, is distinguishable from the present case because there the lease between the owners of the premises and the tenant provided that the improvements were to become a part of the freehold, and the controversy in the case was between the seller and a third party. Here the lease between the owner of the fee and the appellee Jones provides that the lessee shall have the right to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing.

In other oil-producing States it has been uniformly held that casing used in drilling oil wells remains personal prop-

erty. In *Wagner Supply Co.* v. *Bateman,* 185 S. W. (2d) (Tex.) 1052, the plaintiff obtained a chattel mortgage on certain personal property used in connection with an oil well, including the oil-well casing. The mortgage declared that the material was to be placed on certain land described and also provided that the casing was to be placed in an oil well, but was not to become attached or affixed to the realty. A laborer claimed a lien on the oil-well casing and the other property covered by the mortgage and brought a suit to foreclose the same. The court held that the laborer had no lien upon this property because the property had not become a part of the realty and had not become a part of the leasehold. In the opinion the court stated, "Under elementary authority the parties had the undoubted right to agree that the property covered by the mortgage should continue to be personalty although attached in the manner shown to be realty." The owner of the fee was not a party to the suit in that case. To the same effect is *Moore* v. *Carey Brothers Oil Co.* 269 S. W. (Tex.) 75. In *Cheadle* v. *Bardwell,* 26 Pac. (2d) (Mont.) 336, a laborer sought to foreclose his lien against certain oil casing which had been supplied to the driller by a California company. The contract provided that the title to the casing should remain in the seller at all times until the well was completed. It further provided that if the well was not successful, the seller would share a portion of the cost of salvaging the same and that the buyer would return as much thereof as could be salvaged to the seller. The court held that the casing did not become a part of the leasehold and that no title in the casing passed to the buyer and therefore the rights of the laborer did not attach to the casing. The same principle is announced in *Standard Oil Co.* v. *Barlow,* 141 La. 52; 74 So. 627.

Since it appears that the landlord and Jones agreed that the casing could be removed, we hold that the oil casing placed in the ground under such circumstances is a trade

fixture as between the landlord and Jones. We have held that a conditional-sales contract is valid as to trade fixtures unless the rights of the landlord or some third person have intervened. The appellant in this case had a legal right to enter upon the premises and remove the casing, using due care not to cause more injury to the premises than was necessary to remove the pipe. Under the proofs in this case we can find no grounds to say that the seller is estopped to assert his rights under the contract.

The assessment of damages in the trial court appears to have been based upon the theory that the entry of appellant was wrongful and that a trespass was committed in the entry and removal of the casing, and therefore the judgment will have to be reversed. However, it appears in the case that the appellant perhaps committed a wrongful act in going upon the premises and taking more property than it was entitled to take, and thus the case must be remanded for further proceedings to determine the controversy arising out of the taking of the additional property.

*Reversed and remanded, with directions.*